**In re Danny Ray BUREN.**

**In re Annie Laura JONES.**

**In re Marian Frances HENDERSON.**

**In re Bob Dwaine PENOVICH.**

**In re Anetrica Katherine WOODS.**

**In re Guy T. and Maybelle Adelia DRAKE.**

**In re Wallace F. HORNAL.**

**Nos. 80–3229, 80–3226, 80–3320 to 80–3323 and 80–3422.**

United States District Court, M. D. Tennessee, Nashville Division.

Oct. 10, 1980.

Keith M. Lundin, Chapter 13 Trustee in all cases, Nashville, Tenn.

Margaret M. Huff, Asst. U. S. Atty., Nashville, Tenn., for Social Security Administration.

## MEMORANDUM

WISEMAN, District Judge.

This appeal represents the consolidation of seven cases in which the Bankruptcy Court for the Middle District of Tennessee ordered the Social Security Administration to pay a portion of Chapter 13 debtors' monthly social security benefits to the Trustee in bankruptcy. In this case of first impression at the district court level, the issue is whether the Social Security Administration is subject to bankruptcy court income deduction orders that require payment of some or all of a debtor's social security benefits to the Trustee in bankruptcy. The resolution of this issue requires the reconciliation of two United States statutory schemes: the Bankruptcy Reform Act of 1978 and the Social Security Act of 1935.

The relevant facts are the same in each of the consolidated cases. After October 1, 1979, the effective date of the new Bankruptcy Code, voluntary petitions for relief under Chapter 13 were filed with the United States Bankruptcy Court for the Middle District of Tennessee. Each debtor's plan included a provision for payment of social security benefits to the Trustee. The bankruptcy court issued income deduction orders, which required the Social Security Administration to forward all or a portion of the debtors' benefits to the Chapter 13 Trustee. The Social Security Administration has appealed these decisions, and this Court has stayed the bankruptcy court's orders pending the outcome of this appeal.

The case presents a confrontation between the new Bankruptcy Code's broad inclusions in what property is available to the estate and the Social Security Act's prohibition on the subjection of social security benefits to bankruptcy law. The conclusion of this Court is that the later–enacted statute effected a repeal of the Social Security Act insofar as the two are in conflict.

Chapter 13 of the Bankruptcy Reform Act is not limited to wage earner plans; it is entitled "Adjustment of Debts of an Individual with Regular Income." The class of persons to whom Chapter 13 is available has been dramatically expanded. The practice under old Chapter 13 did not live up to the basic purpose of permitting "an individual to pay his debts and avoid bankruptcy by making periodic payments to a trustee under bankruptcy court protection." S.Rep. No.95–989, 95th Cong., 2d Sess. 12, *reprinted in* [1978] U.S.Code Cong. & Ad.News, pp. 5787, 5798. The problem with the old law was that it was limited to wage earners. According to the Senate report, one of the five aspects of the old law that caused it to be "basically and seriously defective" was that "it [did] not permit some individuals

with regular income to qualify, such as small business owners or *social welfare program recipients*, because their principal incomes do not come from wages, salary, or commissions." *Id.* at 13, [1978] U.S.Code Cong. & Ad.News at p. 5799 (emphasis added). The purpose of the new Chapter 13 was to solve these problems. "The new Chapter 13 will permit almost any individual with regular income to propose and have approved a reasonable plan for debt repayment based on that individual's exact circumstances." *Id.*

An "individual with regular income" for purposes of the Bankruptcy Code is an "individual whose income is sufficiently stable and regular to enable such individual to make payments under [a Chapter 13] plan." 11 U.S.C. § 101(24). Both the House and Senate committee reports analyzed this provision as applying to social security recipients. "[I]ndividuals on welfare, *social security*, fixed pension incomes, or who live on investment incomes, will be able to work out repayment plans with their creditors rather than being forced into straight bankruptcy." S.Rep.No.95–989, *supra*, at 24 (emphasis added), [1978] U.S.Code Cong. & Ad.News at 5810; H.R.Rep.No.95–595, 95th Cong., 1st Sess. 312, *reprinted in* [1978] U.S. Code Cong. & Ad.News, pp. 5963, 6269 (emphasis added).

Obviously, the thrust of the Chapter 13 revision was to make its provisions available to a range of persons wider than the prior law. Expansion of the class to whom Chapter 13 is available comports with the basic legislative goal: to encourage financially overextended individual debtors to make greater use of voluntary repayment plans and thereby improve debtor relief, by allowing ratable distribution of future income without necessarily liquidating their nonexempt assets, and creditor recovery, by guaranteeing repayment of most, if not all, of the claims over an extended period. H.R.Rep.No.95–595, 95th Cong., 1st Sess., 116–20. *See* 5 Collier on Bankruptcy ¶ 1300.02, at 1300–19 –1300–21 (15th ed. 1980). The clear purpose and intent of Congress was that social welfare recipients should not be denied the benefits of Chapter 13 plans.

An earlier congressional act, however, had prohibited the subjection of social security benefits to any bankruptcy law. United States Code section 407 of Title 42 provides that "none of the moneys paid or payable ... under [Title II of the Social Security Act of 1935] shall be subject ... to the operation of any bankruptcy or insolvency law."

The purpose of the Social Security Act of 1935 was to provide a minimal level of economic security for the unemployed, the elderly, the homeless, and the blind.[1] The Congress could have reasonably feared that this relief might have been assigned away to creditors or otherwise disappear in the financial distress of the times. The present–day Chapter 13 was not extant in those days, however. The purpose of protecting individuals with social security benefits is equally well served by allowing the individual to use the benefits to get out of his or her debt–ridden state. Social security recipients may now use the Chapter 13 plan to commit themselves toward a fresh start. Liquidation is no longer the sole remedy available to social welfare recipients.

Under the new Bankruptcy Code, the concept of property of the estate is very broad. 11 U.S.C. § 541. Section 541(a)(1)[2] in conjunction with section 1306(a)(1)[3] in-

---

1. *See e. g.* 79 Cong.Rec. 9292 (1935) (remarks of Sen. Long); *id.* at 9283 (remarks of Sen. Wagner); *id.* at 9267 (remarks of Sen. Harrison); *id.* at 5825 (remarks of Rep. Haines); *id.* at 5768 (remarks of Rep. Beiter); *id.* at 5467 (remarks of Rep. Doughton); *id.* at 5455 (remarks of Rep. Greenwood).

2. Section 541 provides that

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located:

(1) except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

3. Section 1306 provides that

clude all legal and equitable interests owned by the debtor as of commencement of the case and acquired after the commencement of the case. Section 407 of Title 42 cannot prevent social security benefits from becoming property of the estate because section 541(c)(1)(A) of the Bankruptcy Code expressly makes legal or equitable interests part of the estate regardless of "any provision that restricts . . . transfer of such interests by the debtor." The concept of legal or equitable interests under the new Code no longer depends on nonbankruptcy law for its definition. *See* 4 Collier on Bankruptcy ¶ 41.02, at 541–9 –541–12 (15th ed. 1980). A debtor's interest in social security benefits is a legal or equitable interest.

Section 522 of the Code provides for exemptions that may be taken at the option of the debtor. The debtor's right to receive social security benefits may be exempted from the property of the estate, if he or she so desires. 11 U.S.C. § 522(d)(10)(A). The enactment of this exemption would be meaningless had Congress not intended that social security benefits were property of the estate in the first place.

The debtors in the instant cases have not elected to exempt their social security benefits. Nothing in the Bankruptcy Code requires them to take the exemptions. The Social Security Administration argues that this permissive provision cannot be allowed to stand in the face of the mandatory prohibition of 42 U.S.C. § 407. Citing congressional confusion,[4] the Administration urges that section 522(d)(10)(A) is, in effect, a nullity.

Congress created the Bankruptcy Commission to study and recommend changes in the bankruptcy laws. 116 Cong.Rec. 27426

(1969). Following years of study by scholars, legislators, and bankruptcy judges, in 1978 extensive revisions of the Bankruptcy Code were enacted into law. One of the central purposes of the revision of Chapter 13 was to expand the availability of Chapter 13 plans. Occasional examples of congressional confusion cannot dissipate the obvious thrust of congressional purpose.

In support of its position, the Administration cites *Philpott v. Essex County Welfare Board*, 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973), in which the Supreme Court held that because of 42 U.S.C. § 407 a state cannot reach a retroactive lump sum social security disability insurance payment even though the recipient agreed to reimburse the county welfare board for all public assistance received by him. *Philpott* is distinguishable, however, because the instant case involves a later act of Congress in which congressional intent to modify the restrictions placed on the transfer of social security benefits was clearly manifested.

■■■ This Court's duty is to construe statutes harmoniously when that can be reasonably done. The effect of the new Bankruptcy Code is to allow debtors to include social security benefits in the property of their estates. The Code does not require inclusion of social security benefits in the estate. If the Code required inclusion, 42 U.S.C. § 407 and the Code would be in direct conflict with each other. Prior special statutes may be repealed or limited by implication from the enactment of a later general statute when the legislative intent to effect a repeal or limitation is clearly expressed. D. Sands, Statutes and Statutory Construction § 23.15 (4th ed. 1972). Furthermore, a repeal or limitation may result when a comprehensive revision

---

(a) Property of the estate includes, in addition to the property specified in section 541 of this title–

(1) All property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under Chapter 7 or 11 of this title, whichever occurs first . . . .

**4.** The Administration cites contradictory House and Senate statements regarding section 522(b). H.R.Rep.No. 95–595, 95th Cong., 1st Sess. 360, *reprinted in* [1978] U.S.Code Cong. & Ad.News, pp. 5963, 6316 (section 522(b) described as "a significant departure from present law"); S.Rep.No.95–989, 95th Cong., 2d Sess. 75, *reprinted in* [1978] U.S.Code Cong. & Ad.News, pp. 5787, 5861 (section 522(b) described as "track[ing] current law").

of a particular subject is promulgated. *Id.* The comprehensive revision of the bankruptcy laws by Congress and its clear intent to include social security benefits in the property of a debtor's estate, at the debtor's option, effects a repeal of 42 U.S.C. § 407 insofar as it conflicts with the Bankruptcy Code. The repeal, however, cannot be considered broader than is reasonably necessary to construe the statutes harmoniously. Therefore, the Court holds that notwithstanding the language of 42 U.S.C. § 407, social security benefits are subject to the operation of the bankruptcy laws only insofar as the debtor is allowed voluntarily to include the benefits as property of the estate and the bankruptcy proceeding, such as a Chapter 13 proceeding, can be entered into only by the voluntary action of the debtor.

■ The Administration argues that even if social security benefits may become subject to a Chapter 13 plan, the Administration cannot be required to pay monies to the Trustee. According to the Administration, the following reasons militate against requiring the Administration to comply with the Bankruptcy Code: (1) The government must be protected against the burdensome expense of issuing split checks; (2) payment to the Trustee is not allowed because he is not certified by the Secretary of the Social Security Administration; and (3) errors in payment would disrupt the functioning of the Social Security Administration.

The Administration cites nothing in support of its burdensome-expense argument. Without some extrinsic evidence of increased expense, this Court views the benefit of convenience to the debtor as outweighing any detrimental burden on the Administration. The income deduction order of the bankruptcy court validly enforces the power of the court against the Social Security Administration as envisioned by section 1325(b).[5]

The Social Security Act provides for certification of "applicants," who may be allowed to receive social security benefits. 42 U.S.C. § 405(j). Parts 404.1601 –.1610 of the Code of Federal Regulations provide in detail the procedures and guidelines to be followed when applying for certification of payment. The Bankruptcy Code provides for confirmation of a plan. 11 U.S.C. § 1325. That confirmation may include the issuance of an income deduction order. *Id.* § 1325(b). Because the Bankruptcy Code was a later–enacted comprehensive revision of the bankruptcy laws and of the powers of bankruptcy courts, the power of the bankruptcy court to issue income deduction orders to the Social Security Administration supersedes the power of the Secretary to limit applicants under the Social Security Act.

The Administration strenuously urges that because of inevitable overpayments and other mistakes, the administration of the Act would be disrupted and the government may even be required to make double payments. Without answering the query respecting double payment because it is not before this Court, the Administration's argument falls on its face. The Administration is not going to be excused from complying with a valid order of the bankruptcy court simply because the Administration might, or–taking the Administration's own dim view of its abilities–will, make errors in payment.

The Social Security Administration may have to change some of its administrative policies because of the enactment of the new Bankruptcy Code, but that is no reason to deny debtors the use of Chapter 13 plans. Even though Congress did not say it was specifically repealing the portion of section 407 that is inconsistent with the Bankruptcy Code, the intent of Congress clearly requires the Social Security Administration to

---

**5.** Pursuant to section 1325(b), the bankruptcy court may order an entity to make an income deduction order. A governmental unit is an entity. 11 U.S.C. § 101(15). The Social Security Administration is a governmental unit. Therefore, the court may issue income deduction orders against the Social Security Administration. Congress has waived sovereign immunity with respect to any claim against a governmental unit that is property of the estate. 11 U.S.C. § 106.

adjust its procedures so that the new Code is not emasculated. The new Code is a statutory scheme, the integrity of which must be preserved. The purpose of the Social Security Act will not disturbed. While mere adjustment in payment procedures, which the Administration has done in the child support and alimony areas,[6] is all that must be done to reconcile the Social Security Act with the Bankruptcy Code, removal of social security recipients from the purview of Chapter 13 plans would block one of the main purposes of the 1978 revision.

6. *See* 42 U.S.C. § 659.

Therefore, the income deduction orders issued by the bankruptcy court are valid implementations of the congressional intent. The orders of the bankruptcy court are affirmed.